UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

H. M. QUACKENBUSH, INC.                     CASE NO. 05-61683
                                            Chapter 11
                    Debtor                  Jointly Administered
--------------------------------------------------------
IN RE:

HMQ METAL FINISHING GROUP LLC               CASE NO. 05-61690

                    Debtor
--------------------------------------------------------
IN RE:

HMQ CHEMTECH LLC                            CASE NO. 05-61692

                    Debtor
--------------------------------------------------------
IN RE:

HMQ NATIONAL PLATING LLC                    CASE NO. 05-61601

                    Debtor
--------------------------------------------------------
APPEARANCES:

HANCOCK & ESTABROOK, LLP                    R. JOHN CLARK, ESQ.
Attorneys for Debtors                            Of Counsel
1500 MONY Tower I
P.O. Box 4976
Syracuse, New York  13221-4976

WILLIAM C. GROSSMAN, ESQ.
Attorney for Niagara Mohawk
Law Department
144 Kensington Avenue
Buffalo, New York  14214

GUY A. VAN BAALEN, ESQ.
Assistant U.S. Trustee
10 Broad Street
Utica, New York  13501

MELVIN & MELVIN, LLP                        LOUIS LEVINE, ESQ.

Attorneys for M & T Real Estate Trust                    Of Counsel
Manufacturers & Traders Trust Company
217 S. Salina Street
Syracuse, New York  13202

MARY M. IOCOVOZZI, ESQ.
Village of Herkimer
P.O. Box 85
126 Mary Street
Herkimer, New York  13350

KERNAN & KERNAN, P.C.                    JAMES W. HYDE, IV, ESQ.
Attorneys for Herkimer county Industrial        Of Counsel
    Development Corporation
258 Genesee Street
Utica, New York  13502

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

## MEMORANDUM-DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

Under consideration by the Court is an application ("Application") filed on March 17, 2005, on behalf of H.M. Quackenbush, Inc., HMQ Metal Finishing Group LLC, HMQ Chemtech LLC and HMQ National Plating LLC (collectively, the "Debtors").  The Debtors seek an order determining adequate assurance of payment for future utility services pursuant to § 366 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1330 ("Code").  The Court signed an interim order granting the relief, and scheduled a final hearing on the Application to be held on March 29, 2005.

The Application was heard at the Court's regular motion term in Utica, New York, on March 29, 2005.  The only entities to appear in opposition to the Application were Niagara Mohawk ("NiMo") and the Village of Herkimer.  Following oral argument, the Court afforded the parties the opportunity to submit memoranda of law.  The matter was submitted on April 11,

3

2005.[1]

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(A) and (O).

## FACTS

The Debtors filed voluntary petitions pursuant to chapter 11 of the Code on March 16, 2005. On March 17, 2005, the Court signed an order granting the Debtors' motions for joint administration of the cases. According to the documents provided to the Court, "the Debtors are engaged in the business of providing metal finishing services to manufacturers located throughout the United States." Application at ¶ 5. The Debtors' facilities are located in Herkimer, Oriskany, and Syracuse, New York. *Id.* at ¶¶ 11-13.

The Debtors utilize gas, water, electric, telephone and other utility services provided by a number of entities, including NiMo. At the hearing on March 29, 2005, it was represented to the Court that NiMo's prepetition claim totals approximately $67,000, after application of a

---

[1] On April 6, 2005, the Court signed a final order granting the relief sought as to all utilities identified in Exhibit A, attached thereto, with the exception of NiMo and the Village of Herkimer. In their Memorandum of Law, filed on April 11, 2005, the Debtors indicate that they reached an agreement with the Village of Herkimer for postpetition use of water supplies from the Village. *See* Debtors' Memorandum of Law at 2.

4

$20,000 deposit by NiMo.[2]   In their Application, the Debtors propose to provide adequate

assurance of future payments, as required by Code § 366, in the form of timely payments for all

postpetition utility services incurred at the three facilities.  The Debtors acknowledge that NiMo's

claims are entitled to administrative priority for any postpetition services provided pursuant to

Code §§ 503(b) and 507(a)(1) and will be paid by the Debtors in the ordinary course of their

business operations.

At the hearing on March 29, 2005, there was a dispute concerning the amount of the

Debtors' monthly usage[3] on five separate accounts with NiMo.  According to NiMo's response,

filed on April 7, 2004, it discovered a computer error in its initial calculations.  The parties have

agreed that the total monthly usage amount is $23,508.  It is NiMo's position that it is entitled

to a deposit of twice that amount as adequate assurance pursuant to Code § 366.  NiMo proposed

that the Debtors make payment of the deposit in three equal monthly installments (or weekly for

12 weeks) from the date of filing.[4]  The Debtors take the position that because they have offered

---

[2] Postpetition recoupment of the prepetition deposit and its application against prepetition debt does not violate the automatic stay.  *See New York State Elec. and Gas Corp. v. McMahon (In re McMahon)*, 129 F.3d 93 (2d Cir. 1997).  The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, signed into law on April 20, 2005, and to take effect on October 17, 2005 ("Act of 2005"), amended Code § 366 to provide that "a utility may recover or set off against a security deposit provided to the utility by the debtor before the date of the filing of the petition without notice or order of the court."  11 U.S.C. § 366(c)(4).

[3] NiMo refers to it as the "average" monthly usage; whereas, the Debtors make reference to the "highest" monthly usage.

[4] Pursuant to 16 N.Y. Comp. Codes R. & Regs. § 13.7(a)(2), a utility is required to offer an existing customer the opportunity to pay a security deposit in three installments, "50 percent down and two monthly payments of the balance."  However, as NiMo's counsel pointed out, that payment arrangement is generally not available to commercial customers that have filed for bankruptcy relief.  *See id.*

5

to prepay for utility services, they should not have to pay such a deposit.[5]  In the event that the

Court determines that they are required to pay such a deposit, they assert that it should only be

for one month's usage and that they should be able to fund it at a rate of $2,000 per week.

## DISCUSSION

> In deciding what constitutes "adequate assurance" in a given case, a bankruptcy
> court must "focus upon the need of the utility for assurance, and to require that
> the debtor supply *no more than that*, since the debtor almost perforce has a
> conflicting need to conserve scarce financial resources.    Accordingly,
> "bankruptcy courts must be afforded reasonable discretion in determining what
> constitutes 'adequate assurance' of payment for continuing utility services."

*Virginia Elec. & Power Co. v. Caldor, Inc.-NY*, 117 F.3d 646, 650 (2d Cir. 1997), *aff'g* 199 B.R.

1, 3 (S.D.N.Y. 1996) ("*Caldor-District*") (emphasis in original; two citations omitted).  The

Court must consider the totality of the circumstances to determine the extent to which NiMo is

subject to an unreasonable risk of nonpayment.  *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63,

83, 87 (Bankr. S.D.N.Y. 2002); *In re Utica Floor Maint., Inc.*, 25 B.R. 1010, 1016 (N.D.N.Y.

1982), quoting *In re George C. Frye*, 7 B.R. 856, 858 (Bankr. D.Me. 1980) (noting that "every

§ 366 proceeding must be decided upon its unique facts").

The court in *Adelphia* found that historical factors, such as prepetition payment history

and whether a deposit had been required prepetition, had "lesser relevance" than the debtor's

liquid assets, other assets and borrowing capability, as well as "measures to provide early

---

[5] Under the Act of 2005, Code § 366 was amended to provide that  the term "assurance
of payment" includes a prepayment of utility consumption.  11 U.S.C. § 366(c)(1)(A)(v).

warning in the event of negative operating results, and quick access to the court."[6]  *Id.* at 83.

At the hearing on the motion, it was represented to the Court that the Debtors allegedly

owed approximately $87,000 to NiMo at the time they filed their petitions.  In addition, NiMo

had on deposit approximately $20,000 at the time the cases were commenced.[7]  According to the

Summary of Schedules filed by the Debtors, their assets totaled $872,084.64, and their liabilities

totaled $5,117,893.72 at the time of filing.  However, according to the Consolidated Balance

Sheet filed on behalf of the Debtors on April 15, 2005, as of March 31, 2005, the Debtors' "Net

property, plant & equipment" total $3,043,192 after depreciation and exclusive of "intangibles."

Their current assets also include cash, accounts receivable, inventory and prepaid expenses of

$969,846.  Their liabilities, without taking into consideration stockholders' equity, total

$6,115,667, of which $3,021,760 is identified as "long-term liabilities."  Furthermore, according

to the "Cash Receipts/Disbursements" for the two week period ending March 31, 2005,  the total

cash available was $248,522, of which $37,863 represented "cash on hand and in the bank at end

of last report" and $210,659  represented accounts receivable.  There were no cash receipts from

sales or rents listed during that two week period; however, the income statement for the entire

month indicates combined net sales of $526,291.  The disbursements for the two week period

totaled $238,395, leaving $10,126 in cash on hand and in the bank at the end of the month, a

decrease of approximately $27,725.  Although only $3,217 in disbursements for "utilities and

---

[6]  According to the Act of 2005, in determining whether assurance of payment is
adequate, a court may not consider the absence of security prepetition and the fact that the
debtor's prepetition payments to the utility were timely.  11 U.S.C. § 366(c)(3)(B)(i) and (ii).

[7]  According to Schedule D, attached to the Debtors' petitions, NiMo held a deposit of
$21,550 at the time the cases were commenced.

telephone" was listed between March 16, 2005 and March 31, 2005, the consolidated income statement for the entire month showed operating expenses for electric and gas as totaling $53,714.

At the hearing on March 29, 2005, Debtors' counsel represented to the Court that they did not intend to reorganize. Instead, the Debtors intend to liquidate their assets. There has been no request for debtor-in-possession financing. Instead, the Debtors continue to operate as going concerns utilizing cash collateral of prepetition lenders pending the proposed sale of their assets.

NiMo has requested a two month deposit or $47,016, payable over three months or on a weekly basis over twelve weeks. The Debtors assert that if they are compelled to pay a deposit to NiMo that it be a one month deposit of $23,508, payable in weekly installments of $2,000. They would prefer to simply prepay NiMo for prospective utility services and allow it an administrative claim for any shortfall.[8] NiMo contends that its billing system is not set up to handle prepayments.

In *Utica Floor Maintenance*, the district court cited to several cases in which cash deposits were found to be unnecessary. *Utica Floor Maint.*, 25 B.R. at 1014. However, as pointed out by the district court, those debtors had not defaulted prepetition. *Id.* The district court in *Utica Floor Maintenance* concluded that if the bankruptcy court were to determine that the debtor had a "sufficiently substantial and liquid estate," no security deposit would be required. *Id.* at 1018. Indeed, in *Caldor*, the debtor had a $250 million "debtor-in-possession financing facility" and had an excellent prepetition payment history, both of which served as a

---

[8] Under the Act of 2005, Code § 366 has been amended to expressly state that "an administrative expense priority shall not constitute an assurance of payment." 11 U.S.C. § 366(c)(1)(B).

8

basis for the determination that a postpetition security deposit was unnecessary.

Based on the totality of circumstances, the Court concludes that NiMo is, indeed, subject to an unreasonable risk of nonpayment. The figures presented in the Debtors' operating report for the two month period postpetition raise concerns about the extent of any income the Debtors are generating from continued sales which would be necessary to carry them through until they can liquidate their assets. According to the Debtors' schedules, it also appears that most, if not all, of the Debtors' assets are subject to security interests. In addition, the Court notes the fact that the Debtors were almost four months in arrears to NiMo when the cases were commenced.

Under the circumstances of this case, the Court believes that a one month's deposit of $23,508 is warranted, payable in the sum of $16,000 by no later than May 25, 2005,[9] and the balance of $7,508, payable in three equal weekly installments no later than June 15, 2005. The Court recognizes that this may strain the Debtors' resources as they attempt to liquidate their assets. Nevertheless, the Court believes that NiMo should not be forced to carry the Debtors "on its shoulders" as they attempt to remain going concerns pending any sale. This is particularly true given that the Debtors were not current on their obligations to NiMo when they filed their petitions and that NiMo is owed approximately $67,000 as a prepetition creditor. Simply allowing NiMo priority as an administrative claimant for any unpaid postpetition services provided may be of little consolation if there are insufficient unencumbered assets in the estate and, in the opinion of the Court, does not provide NiMo with the statutory right to adequate assurance envisioned by Congress in enacting Code § 366.

---

[9] Since the hearing on March 29, 2005, eight weeks have passed. The Debtors' offer to make weekly payments of $2,000 as adequate assurance totals $16,000, which presumably the Debtors have been accruing in anticipation of the outcome of this Application.

9

Based on the foregoing, it is hereby

ORDERED that the Debtors make a payment of $16,000 as a down payment on a security deposit to NiMo no later than May 27, 2005; and it further

ORDERED that the Debtors make payment of $7,508, payable in three equal weekly installments, to NiMo no later than June 17, 2005; and it is further

ORDERED that in the event of a payment default fo the security deposit amounts, NiMo can fax notice to the Debtors, with a copy to Debtors' counsel, and if payment of the undisputed amount is not made within three business days thereafter, NiMo will be able to submit an ex parte order terminating utility service to Debtors' facilities..

Dated at Utica, New York

this 20th day of May 2005

/s/_____
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge