R. John Clark, Esq.                          Guy A. Van Baalen, Esq.
Attorney for Debtor                          Assistant U.S. Trustee
Hancock & Estabrook. LLP                     10 Broad Street
1500 MONY Tower I, P.O. Box 4976             Utica, New York 13501
Syracuse, New York 13221-4976

Lee E. Woodard, Esq.                         Orville Aarons, President
Attorneys for Official Committee of          O. Aarons & Company, Inc.
    Unsecured  Creditors                     82 Roxbury Road
Harris Beach, LLP                            Washington, Connecticut 06793
One Park Place 4th Floor
300 South State Street
Syracuse, New York 13202

Louis Levine, Esq.
Attorneys for M&T Real Estate Trust and
    Manufacturers and Traders Trust Company
Melvin & Melvin, PLLC
217 South Salina Street, Suite 700
Syracuse, New York   13202

Re:     H. M. Quackenbush                    Case No. 05-61683
        HMQ Metal Finishing Group, LLC       Case No. 05-61690
        HMQ Chemtech LLC                          Case No. 05-61692
        HMQ National Plating LLC             Case No. 05-61691
        Chapter 11 Jointly Administered

## LETTER-DECISION and ORDER

On June 21, 2005, the Court considered the motion of the jointly administered Debtors for

an order appointing O. Aarons &Company, ("Aarons") to act as their financial advisor pursuant to

Sec.327(a) of the Bankruptcy Code, 11 U.S.C. §§. 101-1330 ("Code").  The motion sought the

further relief that the appointment be made effective as of the date of the filing of the Debtors'

Chapter 11 petitions, to wit: March 16, 2005.

On June 21, 2005, there was extensive opposition to the motion filed by Manufacturers and Traders Trust Company and M&T Real Estate Trust ("collectively M&T"), the Office of the United States Trustee("UST") and the Official Committee of Unsecured Creditors("Committee"). Following oral argument of the motion, the Court permitted Aarons to file a supplemental affidavit with contemporaneous time records to be attached. The supplemental affidavit was electronically filed with the Court on July 15, 2005, and simultaneously mailed to all of the creditors.

The Debtors in their Application in support of the motion asserted generally that Aarons was employed pre-petition pursuant to an Engagement Letter dated January 30, 2004 ("Engagement Letter") as their financial advisor because of its extensive experience in advising companies similar to the Debtors and its ability to identify potential purchasers for the Debtors' businesses. The Application itemizes the specific services which Aarons was to perform, noting that some of the services were performed pre-petition. The Application indicated that Aarons would receive, pursuant to the Engagement Letter and subject to Court approval, a success fee of $50,000 upon the closing of the sale of the Debtors' assets, in addition to the fees otherwise provided for in the Application. The Application noted significantly that while Aarons had performed pre-petition services for the Debtors, it did not hold a claim against the Debtors by virtue of those services and was otherwise disinterested.

Aarons, by its president Orville Aarons, also submitted an Affidavit in support of the Application, outlining the qualifications of his firm and the services to be rendered to the Debtors. The Aarons' Affidavit essentially mirrored the content of the Debtors' Application emphasizing the assertion that Aarons was a disinterested party otherwise eligible to be retained pursuant to Code § 327(a). Attached to the Affidavit was Orville Aarons' curriculum vitae and a copy of the

3

Engagement Letter.  Both the Application and the Affidavit admitted that the Debtors' secured creditor was M&T and it was owed approximately $2.8 million dollars.

In the Supplemental Affidavit, Aarons asserts that it was unrepresented by counsel in its dealings with the Debtors and did not understand that it needed to be retained by a court order before it could be compensated for its post-petition efforts in bringing a prospective purchaser of the Debtors' assets to the table.  It noted that it had not previously been retained in a bankruptcy case, other than as an expert witness for which no order was required.  Aarons also points out that through its efforts Hudson Partners, LLC ("Hudson") made an offer to purchase the Debtors' assets and that, "absent those efforts, in all likelihood, the Debtors would have had to cease operations and the Debtors' principal secured creditor would have liquidated its collateral at substantially reduced prices." (Supplemental Affidavit of Orville G. Aarons, sworn to July 13, 2005 at para. #6).[1]  Finally, Aarons observes in a footnote to the Supplemental Affidavit, "even if its retention is approved that there are presently no unencumbered funds to pay its fee, and only seeks nunc pro tunc appointment at this time."

M&T, the Debtors primary secured creditor, opposes the motion alleging that most, if not all, of Aarons' services were rendered pre-petition, thereby entitling it to nothing more than a pre-petition claim.  M&T also notes that, in any event, it is opposed to the use of its cash collateral to pay any professional fees.  The UST asserts that the motion is untimely, noting that as of the return date  the Debtors had been in Chapter 11 for some 3 months and that a § 363 sale was proceeding, which would render the services performed by Aarons  moot.  Finally, the Committee, also noting

---

[1] Ultimately, Hudson was not the successful bidder for the Debtors' assets; it was, however, acknowledged to be a "stalking horse" and was compensated therefor.  *See* Order dated July 22, 2005.

4

that as of the return date of this motion a motion to sell the Debtors' assets was pending before the

Court which would return little or nothing to the unsecured creditors, points to a provision in the

asset purchase agreement which was the subject of the pending sale motion, prohibiting the payment

of, "any commission, broker's or finder's fee from Purchaser, or any affiliate of Purchaser, in

connection with any of the transactions contemplated by this Agreement."[2]  The Committee points

out that there will be no other funds available with which to pay professional fees and, in fact, any

compensation claimed by Aarons would be for pre-petition services and not of an administrative

nature.

As an initial matter, the Court notes that Aarons' contemporaneous time records, attached

to the Supplemental Affidavit, begin with an entry on 2/07/04 some 13 months before the Debtors

filed their Chapter 11 cases and, therefore, the services, if uncompensated, could not be paid from

estate assets even if this Court were to appoint Aarons on a nunc pro tunc basis.  As for the services

rendered post petition, assuming arguendo that the Court were to appoint Aarons nunc pro tunc to

the filing date, to wit: March 16, 2005, its contemporaneous time records attached to the

Supplemental Affidavit reflect a total of 16.7 hours.[3]  As a further obstacle to Aarons' request, while

the Court at the June 21, 2005 hearing suggested that Aarons should provide contemporaneous time

---

[2]The Court notes, however, that Aarons is not seeking fees from the Purchaser, but from
Debtors' estates.

[3] The Supplemental Affidavit asserts that the contemporaneous time records referred to as
a "Time Summary" do not reflect "every discrete task in perfect detail."  It goes on to indicate that
it "does not reflect extensive documents reviewed by Aarons in connection with its analysis and
development of marketing strategies for the Debtors' assets" without an explanation as to why it
does not.  The Court also notes that of the 16.7 hours actually recorded, 10 of those hours were
devoted to a Court appearance on 6/21/05, without a further explanation as to how that Court
appearance was of any benefit to the Debtors.

5

records, in reality Aarons' compensation was tied to a percentage of the "Transaction Price" defined in the Engagement Letter, was not to be based on time actually devoted to the engagement. Aarons has asserted that it is actually entitled to a "Success Fee" of $50, 000, with which Debtors concur.[4]

In order for any professional to be compensated for services rendered to a Chapter 11 debtor post petition, it must first be appointed by a court order pursuant to Code § 327(a). If that appointment does not occur until some period of time after the case has been commenced and the services actually rendered, generally, the professional forfeits any compensation that it would have been entitled to during the intervening period (the period between the bankruptcy filing and the date of the order of appointment) absent a showing of excusable neglect on the professional's part. Excusable neglect is frequently defined as a failure to perform an act where the failure is beyond the control of the actor. In this Circuit, however, the basis for granting nunc pro tunc appointment of professionals was specifically outlined in the case of In re *Keren Ltd. Partnership*, 189 F.3d 86 (2nd Cir. 1999). The Court of Appeals for the Second Circuit noted that "Nunc pro tunc approval should only be granted in narrow situations and requires that (i) if the application had been timely, the court would have authorized the appointment, and (ii) the delay in seeking court approval resulted from extraordinary circumstances." *Id.* at page 87. The Court of Appeals in rendering its decision indicated that it was doing so "for substantially the reasons stated by the district court." *Id*. at page

---

[4] The Court is at a loss to understand how this "Success Fee" is calculated by reference to the Engagement Letter which appears to provide that Aarons is to receive a "Transaction Fee" equal to " the higher of $10,000 or five percent (5.0%) of the Transaction Price ($5000 of which will be paid upon execution of this Agreement." (See Engagement Letter dated January 30,2004 at page 2). The Court notes that in June of 2005 the Debtors had negotiated a sale price with Hudson of $570,000 which was later increased to $630,000. Ultimately the Debtors assets were sold to Whyco HMQ, LLC, not Hudson, for the sum of $800,000. (*See* Order of July 22, 2005). The Engagement Letter makes no reference to a "Success Fee."

88. The U.S.District Court for the Southern District of New York ("District Court") affirmed the finding of the U.S. Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") which had concluded that as to "extraordinary circumstances" the professional "undoubtedly was aware of the importance in having its retention approved by the court, yet chose to perform post-petition services in the absence of that approval."  *In re Keren Ltd. Partnership*, 225 B.R.303, 307 (S.D.N.Y. 1998).  As support for that conclusion, the District Court, as had the Bankruptcy Court, pointed to the motion filed by the professional to assume its pre-petition commission agreement wherein the professional had noted the importance of compelling the debtor to assume that agreement as a basis for giving rise to an administrative expense claim.  Ironically, the professional in *Keren* withdrew that motion, filed some two months post petition and waited until January 1998, apparently after performing significant services pursuant to the agreement, to file a second motion seeking to be retained as the debtor's real estate broker and requesting nunc pro tunc approval of that appointment to April 9, 1997, the date on which the debtor filed its Chapter 11 bankruptcy petition. The District Court having concluded that the Bankruptcy Court had not abused its discretion in failing to find extraordinary circumstances, did not consider any other factors.  *Id*. at page 307

In the matter, sub judice, this Court is not convinced that Aarons had the same degree of sophistication as the professional in *Keren* and it appears that this was not a case where the professional was relying on debtor's counsel to secure its appointment.  Aarons' contention is simply that it was unaware that it required an order of appointment in order to be compensated.  Evidence of Aarons' ignorance of the requirements of Code Sec. 327(a) could perhaps be found in the relatively long delay (3 months post petition) in filing this motion were it not for the fact that the motion was filed by the Debtors' counsel and nowhere in the Debtors' Application is there any

7

explanation for the 3 month delay in actually filing the motion.  In fact the Debtors' Application in support of the motion does not even request nunc pro tunc appointment. (*See* Debtors' Application dated June 6, 2005).[5]

In confirming the findings of the Bankruptcy Court in *Keren*, the District Court noted a number of factors that define "extraordinary circumstances" to include "'whether the applicant or some other person bore the responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties ; and other relevant factors.'" *Id.* at 307 quoting *In re F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 105-06 (3d Cir. 1988).  Applying those factors to this Application, the Court concludes that while Aarons may not have been aware of the need to be appointed, Debtors' counsel did; yet it offers no explanation as to why it delayed almost 3 months before filing this motion.  Second, there are no specific allegations that there was any time pressure to begin service although Aarons contends that it had been in the process of locating prospective purchasers for the Debtors' businesses both pre and postpetition. The third factor would seem to be inapplicable while the fourth factor in terms of prejudicing third parties appears unlikely given the apparent lack of unencumbered assets in the Debtors' case

After considering all of the facts presented, this Court reaches the conclusion that Aarons has met  the "extraordinary circumstances" prong of the Second Circuit's test as announced in *Keren*.  It is clear that Aarons was at the mercy of Debtors' counsel in obtaining appointment as a

---

[5] The request for nunc pro tunc appointment is found only in the unsworn "Affidavit" of Orville Aarons filed with the motion and the Supplemental Affidavit of Orville Aarons sworn to on July 13, 2005.

8

professional in this case, regardless of whether or not it was aware of the need for that appointment. No explanation is offered by the Debtors as to why some three months passed before this motion was filed.[6]  The Court also gets the sense that the Debtors continued to rely on Aarons' expertise post- petition in bringing a prospective purchaser to the table, and, in fact, Aarons asserts that it produced Hudson, who, though not the successful bidder, served as a stalking horse.  This case can be distinguished from *Keren* in that there is no evidence that Aarons was as sophisticated as the professional in that case, the delay in seeking appointment is unexplained but it certainly does not appear to be of Aarons' making and, in this case, Aarons may have actually been misled by the Debtors into rendering services in the absence of an appointment.

The Court believes that the first prong of the *Keren* test is also satisfied in that it appears that Aarons would have been appointed had an application been filed at the inception of the case. Both Aarons and the Debtors assert in their respective submissions to the Court that despite the fact that Aarons provided pre-petition services to the Debtors, it held no pre-petition claim against the Debtors and, therefore, was disinterested within the meaning of Code § 101(14).

Accordingly, the Court grants the Debtors' motion to the extent that it seeks to appoint Aarons as financial advisor to the Debtors effective nunc pro tunc to March 16, 2005.

IT IS SO ORDERED

Dated at Utica, New York
this 3rd day of February 2006

/s/    Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge

---

[6]The Court notes that Hancock & Estabrook, LLP wasted no time in having itself appointed as Debtors' counsel.  An Order of appointment was executed by this Court on March 18, 2005, two days after the case was filed based upon an application of the same date.